**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

OSCAR GARNER,                              )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )          No. 4:24-CV-00300 SPM
                                          )
JOHN DOE 1, et al.,                       )
                                          )
            Defendants.                   )

**OPINION, MEMORANDUM AND ORDER**

Before the Court are the motions of plaintiff Oscar Garner, a Missouri prisoner incarcerated

at Eastern Reception Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri, for

leave to proceed in forma pauperis in this civil action. [ECF Nos. 4 and 8]. Having reviewed the

motions and financial information, the Court will deny the motions. The Court will dismiss this

action pursuant to 28 U.S.C. § 1915(g). Alternatively, plaintiff's action is subject to dismissal

pursuant to 28 U.S.C. § 1915(e)(2)(B) as legally frivolous or for failure to state a claim.

**Legal Standard on Initial Review**

This Court is required to review a complaint filed in forma pauperis and must dismiss it if

it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks

monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490

U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does

not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

District courts must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," courts should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). District courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, or interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

### Background and Filing of the Amended Complaint

Plaintiff Oscar Garner, an inmate at ERDCC in Bonne Terre, Missouri, filed the instant action pursuant to 42 U.S.C. § 1983 on February 26, 2024. [ECF No. 1]. On March 12, 2024, the Court issued an Order noting that plaintiff, a three-striker pursuant to 28 U.S.C. § 1915(g), had neither paid the full filing fee of $405 nor filed a motion to proceed in forma pauperis in this

action.[1] [ECF No. 5]. The Court noted that from the claims as provided in plaintiff's original complaint, it did not appear that plaintiff was under imminent danger of serious physical injury such that the Court could grant a motion to proceed in forma pauperis. However, plaintiff would be allowed an opportunity to amend his complaint and either pay the full filing fee or file a motion to proceed in forma pauperis. Plaintiff filed an amended complaint to the Court on March 21, 2024. [ECF No. 7]. On that same date he filed a motion to dismiss several parties and claims from his initial complaint, as well as a motion for leave to proceed in forma pauperis. [ECF No. 8]. Plaintiff had also previously filed a motion for leave to proceed in forma pauperis on the date of the Court's March 12, 2024 Opinion, Memorandum and Order. *See* ECF No. 4.  Plaintiff's amended complaint supersedes all claims in his initial complaint, and as such his motion to dismiss claims and parties in his initial complaint will be denied as moot. *See, e.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005).

In plaintiff's amended complaint he brings claims pursuant to 42 U.S.C. § 1983 against defendants John Doe 1 (Contracted Health Service Administrator of ERDCC), Jane Doe 1 (Sick Call Nurse in Administrative Segregation at ERDCC) and Jane Doe 2 (Scheduler for Sick Call Nurse at ERDCC). [ECF No. 7]. John Doe is sued in his official capacity only, and the Jane Does are sued in their individual capacities only.

---

[1] *See Garner v. Huibregtse, et al.,* No. 3:09-cv-301-SLC (W.D. Wis. July 28, 2009) (district court dismissed plaintiff's action for failure to state a claim based on res judicata, and assessed a strike under 28 U.S.C. § 1915(g)); *Garner v. Kirby*, No. 3:14-cv-545-JDP (W.D. Wis. Feb. 9, 2017) (district court dismissed plaintiff's action for factual frivolousness, and assessed a strike under 28 U.S.C. § 1915(g)); and *Garner v. Hill, et al.,* No. 2:17-cv-51-LA (E.D. Wis. Mar. 1, 2017) (district court dismissed plaintiff's action for failure to state a claim, and assessed a strike under 28 U.S.C. § 1915(g)). Based on plaintiff's previous filings, the United States District Court for the Western District of Wisconsin specifically determined that plaintiff was subject to the three-strikes provision of 28 U.S.C. § 1915(g). *See Garner v. Esser, et al*., No. 3:17-cv-561-JDP (W.D. Wis. Sept. 13, 2017 (discussing plaintiff's prior strikes and determining that he could not proceed in forma pauperis).

Plaintiff states that he entered ERDCC on December 12, 2023. Prior to entering ERDCC he was diagnosed with irritable bowel syndrome (IBS), and he claims he had previously been treated for IBS with a drug called Hyoscyamine. Plaintiff neglects to inform the Court who purportedly diagnosed him with IBS,[2] prescribed him the drug Hyoscyamine for the alleged treatment of IBS or how long he had been taking the drug.

The Court notes that in plaintiff's initial complaint that plaintiff reported that he was unable to take the drug Hyoscyamine upon his transfer to ERDCC, which occurred on or about December 12, 2023. Plaintiff was transferred from General Population at ERDCC into Administrative Segregation at ERDCC on or about December 24, 2023. At that time, he had not yet been given a doctor's appointment. He appears to take issue with this fact, arguing that the policy that inmates be required to obtain a sick call appointment before they can seek medicine is unconstitutional. Additionally, plaintiff believes that he was thwarted from obtaining a sick call appointment when he was transferred to Administrative Segregation because of the delay in obtaining the appointment.

Specifically, in his amended complaint, plaintiff claims that when he arrived at ERDCC on December 12, 2023, he was told by an unnamed person that he would have to see the doctor to be represcribed the medicine Hyoscyamine to be able to take the medicine. However, plaintiff was told that the sick call nurse could not schedule him to see the doctor or the eye doctor, rather the

---

[2]The Court takes judicial notice of a prior case plaintiff had in this District wherein plaintiff complained that the St. Charles Detention Center had failed to adequately treat his complaints of lactose intolerance and IBS. *See Garner v. Keen*, No. 4:21-CV-00004 JAR (E.D.Mo.). After discovery in that action, the Court found on summary judgment, on March 19, 2024, that plaintiff had failed to show a factual record that he had complained to medical personnel at the St. Charles Detention Center that he had been diagnosed with IBS, had previously been treated for IBS with prescription medication, was in need of such medication at the Detention Center and was denied medication, and/or was denied treatment for medically diagnosed symptoms of IBS. Moreover, there was ample evidence in the record that defendants responded to plaintiff's requests for medical care. *Id.*

Jane Doe 2 Nurse Scheduler had to do so. Plaintiff claims that Jane Doe 2 failed to quickly schedule him with either the doctor or the eye doctor before he entered Administrative Segregation, so he was unable to renew the Hyoscyamine prescription or get on the list to get new glasses.

Plaintiff was taken from General Population to Administrative Segregation on or about December 24, 2023. He claims that he still had not heard back by that time regarding his request to see either the eye doctor or the regular doctor so that he could renew his Hyoscyamine prescription. Thus, at some unnamed point during this time, he placed a Health Service Request (HSR) to see sick call about his Hyoscyamine prescription. Plaintiff did so despite having previously been told that he would need to see the nurse scheduler to obtain an appointment with the doctor. Plaintiff did not hear back as to his HSR. Plaintiff claims that he wrote to the Health Service Administrator about both the Hyoscyamine prescription and the loss of his glasses sometime in January of 2024, but he heard nothing back. It does not appear that plaintiff was having any IBS symptoms at the time he wrote the HSR.

Plaintiff alleges that he did not receive a response to the HSR in December of 2023, so a week later, January 4, 2024, he wrote another HSR and wrote an Informal Resolution Request (IRR). Plaintiff has not included a copy of the IRR with his complaint. And again, he does not complain that he was having symptoms of IBS at the time he wrote the IRR. He claims that he did not receive a response to his HSR or the IRR. However, after he wrote the IRR, he became constipated and began to suffer some nausea and vomiting. Plaintiff, however, does not indicate when these symptoms began. Plaintiff seems to attribute the nausea and vomiting to IBS.

On January 17, 2024, plaintiff wrote another HSR regarding his Hyoscyamine prescription. He asserts that the HSR stated he needed to see a nurse or doctor because he was "throwing up blood with vomit and having muscle pain and was constipated." This appears to be the first time

that plaintiff wrote an HSR regarding health symptoms. Again, plaintiff appears to attribute these symptoms to IBS. He claims that he did not receive a response to his request, and he was not seen on sick call in the Administrative Segregation Unit.

At approximately the end of January 2024, plaintiff wrote to an unnamed Health Service Administrator of ERDCC regarding not seeing an eye doctor and not seeing a nurse in Administrative Segregation for sick call, as well as the failure to receive his prescription for Hyoscyamine. Plaintiff does not describe sick call or how sick call worked in the Administrative Segregation Unit. For instance, he does not indicate how his HSRs in the Administrative Segregation Unit were processed, how often a sick call nurse or doctor came to the Administrative Segregation Unit at ERDCC, or if inmates were allowed to leave the Administrative Segregation Unit if they were visibly ill.

Instead, plaintiff makes a conclusory statement that he complained in his letter to the Health Service Administrator about the policy at ERDCC that an inmate needed to see a doctor to get a refill on his medication. Although he did not receive a response to his letter, on February 5, 2024, Nurse Jane Doe 1 came to his cell in Administrative Segregation and had a conversation with him.

In the amended complaint, plaintiff states that Nurse Jane Doe 1 told him:

> they were not holding sick call in segregation only in General Population Inmates and it will be awhile [sic] before she Jane Doe-1 will due [sic] any sick call appointments so she will not be able to examine him or place him on any kind of referral list to see a doctor so Garner will have to wait and stop writing. We have a whole prison to worry about.

However, the in initial complaint, plaintiff indicates that he was told something slightly different by Nurse Jane Doe 1. Garner stated:

> On 2-4-24 Jane Doe 1 came to Garner's door and explained she can't see him she has other things to do and it will be awhile before she can see him and/or examine him maybe a couple months. So he's just gone have to wait and stop writing John Doe 2 and 3. We have a whole prison to worry about."

6

Plaintiff argues that, not only at ERDCC but also within the MDOC, it is unfair that you cannot be seen or referred to any kind of doctor or be reissued any medication without first being seen on sick call. He claims that currently, there is an unlawful policy in Administrative Segregation at ERDCC not to hold sick call appointments "without cause." Plaintiff, however, does not indicate what "cause" is or if he is referring to having to show that an inmate is physically ill to see a nurse or doctor.

Additionally, plaintiff complains that unnamed defendants are continuing to deny plaintiff "medical treatment for a serious medical need." However, plaintiff has failed to articulate exactly what his "serious medical need" entails. Rather, he has simply indicated that on two separate days he was suffering from constipation and/or diarrhea and/or vomiting. These two incidents, as set forth below, do not establish a serious medical need. Nevertheless, plaintiff believes that John Doe 1, the Health Service Administrator, is "responsible for ensuring that all medical staff [is] correctly supervised and training on [their] job description at ERDCC whether [its] scheduling appointments of any kind or how and when nurses should hold sick call appointments in segregation at ERDCC."

Plaintiff seeks an injunction directing defendants to provide him with adequate medication and treatment. He also seeks damages in this action against defendants.

## Discussion

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). For the reasons explained below, the Court finds that plaintiff's claims in this action are subject to dismissal.

7

**A. Plaintiff Has Failed to Exhaust His Administrative Remedies with Respect to His Claims**

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Moreover, pursuant to *Booth v. Churner*, 532 U.S. 731, 733-40 (2001), exhaustion is required where prison administrative remedies are available, even if the available administrative remedies do not provide the precise, or full, relief sought. *See also Lyon v. Krol*, 305 F.3d 806, 808 (8th Cir. 2002). Prisoners are required to fully exhaust their prison remedies prior to filing a complaint in Federal Court. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly (so that the agency addresses the issue on the merits)") (citation omitted); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("if exhaustion was not completed at the time of filing, dismissal is mandatory"); *see also Hammett v. Cofield*, 681 F.3d 945, 948 (8th Cir. 2012) (indicating that the "MDOC Manual expressly prohibited reprisal against an inmate for using the grievance procedure and set forth detailed special grievance procedures for an inmate who 'believes that a reprisal has occurred').

On pages 8-11 of plaintiff's amended complaint, he indicates that the Missouri Department of Corrections has a grievance procedure covering all or some of his claims for relief. Although he indicates that he filed an initial Institution Resolution Request (IRR), plaintiff states that he is still in the process of attempting to move through the steps of the grievance process. [ECF No. 7, p. 11]. Plaintiff asserts in his amended complaint that defendants have not yet responded to his IRR even though the time limits are up to do so. He believes that "they are refusing to respond." Plaintiff, however, has failed to attach a copy of his IRR to his complaint, indicating that he has

8

attempted to resolve the matter with MDOC. Additionally, he notes in his amended complaint that he just filed his IRR at the beginning of January in 2024.

Pursuant to the Missouri Department of Corrections Offender Rulebook, to properly exhaust an IRR and grievance, an offender must file a grievance appeal. *See Missouri Dept. of Corr. Offender Rulebook*, p.68 (2019) (outlining the grievance process); *see also Hammett*, 681 F.3d at 947. The *Missouri Dept. of Corr. Offender Rulebook* specifically states, "If you have not received a response within [the 40-day timeframe], you may proceed to the grievance stage, by notifying IRR staff and requesting an offender grievance form. An appeal response is provided to the offender within 100 days of receipt of the grievance appeal. After receipt of the appeal response, the grievance process is exhausted."

Given the record before the Court, it does not appear that plaintiff has pursued his IRR and grievance through all the steps of the grievance process. *See Irving v. Ventura*, 2020 WL 5491689 (W.D. Mo. Sept. 2, 2020) (dismissing for failure to exhaust when plaintiff indicated on the face of the complaint that he filed a grievance only a couple of weeks before and had not yet received a formal answer). Although this Court would usually require plaintiff to show cause why he has failed to properly exhaust his prison grievance process, because plaintiff's case is subject to dismissal for other reasons, the Court will decline to do so in this instance.

**B.  Even if Plaintiff Had Properly Exhausted His Administrative Remedies, it Appears that His Claims Would be Subject to Dismissal as Frivolous or for Failure to State a Claim**

**1.  Claims Against John Doe Health Service Administrator in His Official Capacity**

Plaintiff sues defendant John Doe Health Service Administrator in his official capacity only. An official capacity claim against an individual is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public

employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, John Doe is alleged to be a Health Service Administrator at ERDCC. As such, the official capacity claims against him are actually claims against the State of Missouri, his employer. The claims fail for three reasons. First, to the extent that plaintiff seeks money damages, the State of Missouri is not a 42 U.S.C. § 1983 "person." "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Because plaintiff is missing an essential element of a § 1983 action, his claim for money damages against the State of Missouri must be dismissed.

Second, sovereign immunity also protects the State of Missouri from plaintiff's claims for money damages. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). Sovereign immunity also bars a claim for money damages against a state official sued in an official capacity. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment

immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception does not apply because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property"). For this reason, as well, plaintiff's claim for money damages against the State of Missouri must be dismissed.

The Supreme Court has held, however, that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will,* 491 U.S. at 71 n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985), and *Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (emphasis added)). That exception is a narrow one - "[i]t applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) (citations omitted).

The plaintiff has alleged that the defendants have subjected him to an ongoing constitutional injury. Because he has sued defendant John Doe in his official capacity, he cannot

recover damages for these alleged violations. But if the court determines that the complaint states a plausible claim for relief, the plaintiff may pursue his request for injunctive relief.

Although plaintiff is seeking prospective injunctive relief relative to the acts of John Doe Health Services Administrator, he has not demonstrated the State of Missouri's liability with respect to his claims. *See infra*. Such liability may attach to a governmental entity if a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.,* 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

To sustain a claim under 42 U.S.C. § 1983, however, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *Wong v. Minnesota Dep't of Human Servs.,* 820 F.3d 922, 934 (8th Cir. 2016). *See also Young v. Harrison*, 284 F.3d 863, 866 (8th Cir. 2002) ("Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right"). Specifically, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). *See also Dubose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999) ("In any [42 U.S.C.] § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the constitution or laws of the United States"). As set forth below, the policy of which plaintiff complains, a failure to train individuals

13

nurses supervised by him as to the correct diagnosis and treatment of irritable bowel syndrome is not facially unconstitutional. Moreover, plaintiff complains that the Health Services Administrator somehow sets the policy for all of the Missouri Department of Corrections that inmates need to first go through sick call before they can both see a doctor and have prescriptions renewed.

First, as to plaintiff's second contention, it is well established that there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)). *See also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability). As such, plaintiff is unable to present evidence that he was harmed due to a State of Missouri policy, custom, or failure to train.

As to plaintiff's first contention, that John Doe Health Services Administrator is responsible for training nurses in recognizing and treating irritable bowel syndrome and getting inmates in Administrative Segregation to a doctor, such claims are conclusory as made by plaintiff. There is no indication that a Health Services Administrator in the Missouri Department of Corrections is responsible for training nurses at the Missouri Department of Corrections on such a procedure. Additionally, other than citing his own incident involving Jane Doe 1, the sick call nurse in Administrative Segregation, the plaintiff alleges no facts that would show that ERDCC nurses' conduct was caused by a failure to train or supervise. Plaintiff's claim against Jane Doe 2 is that he attempted to make an appointment with the scheduling nurse in the General Population prior to entering Administrative Segregation but he did not receive a "callback."

A plaintiff can assert a failure to train claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that

14

inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the entity "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.,* 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.,* 874 F.3d 581, 585 (8th Cir. 2017). As with an unconstitutional custom, a "failure to train or supervise must be the moving force behind the constitutional violation." *See Doe v. Fort Zumwalt R-II Sch. Dist.,* 920 F.3d 1184, 1189 (8th Cir. 2019).

Plaintiff has not alleged that MDOC had notice of any inadequate procedures. He has not alleged any pattern of constitutional violations by untrained employees. He has alleged nothing but the bare bones assertion that Jane Doe 1's conduct, failing to treat him for IBS, resulted from a failure to train and supervise, which was allegedly the policy and custom of MDOC overall. First, as noted below, plaintiff has not properly alleged that Jane Doe 1 was deliberately indifferent to his serious medical need. Moreover, plaintiff's bare bones assertions of such are not sufficient to state a plausible claim for failure to train and supervise. *See Iqbal*, 556 U.S. at 677-78 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions[s]' devoid of 'further factual enhancement.'") (internal citations omitted). For these reasons, the Court finds plaintiff has not stated a plausible claim the State of Missouri or the Missouri Department of Corrections for failure to train or supervise. The Court will dismiss these claims for failure to state a claim upon which relief may be granted.

For the aforementioned reasons, plaintiff has not demonstrated the liability of the State of Missouri for either monetary damages or injunctive relief.

## 2. Claims Against Jane Does 1 and 2, Nurses at ERDCC, in Their Individual Capacities

Although plaintiff names Jane Does as defendants in this action, he has failed to articulate any specific allegations against Jane Doe 2 in the body of his complaint such that he can hold this nurse liable in this action. Namely, although he was told by the sick call nurse in the general population that he would be contacted by the scheduling nurse in the general population, who he refers to as Jane Doe 2, he never heard back from her. There is no indication that plaintiff spoke to Jane Doe 2 himself and that she purportedly refused his request to schedule him for an appointment with medical. Rather, an intermediary told him that something would be done, i.e., that he would receive a callback from Jane Doe 2, and nothing was done. For this reason alone, he attempts to hold Jane Doe 2 responsible for unconstitutional deliberate indifference to his serious medical needs.

Liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights); and *Love v. Schoffman*, 142 Fed. Appx. 278, 279 (8th Cir. 2003) (affirming pre-service dismissal under 28 U.S.C. § 1915 because the complaint, among other infirmities, "did not specify which of the many named defendants was responsible for each of the

16

alleged harms"). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019). Because plaintiff has failed to connect his claims to Jane Doe 2, his allegations against Jane Doe 2 are subject to dismissal.

Additionally, plaintiff has also failed to show that defendant Jane Doe 1, the sick call nurse in Administrative Segregation at ERDCC, was purportedly liable for deliberate indifference to his serious medical needs.

To state a claim for relief under § 1983, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. With that framework in mind, the Court finds plaintiff has failed to state a claim upon which relief may be granted against Jane Doe 1.

"Deliberate indifference to the serious medical needs of a prisoner constitutes cruel and unusual punishment . . . and the Constitution prohibits state governments from inflicting such punishments." *Merlin v. Nix,* 86 F.3d 761, 765 (8th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976)). However, "[a] prima facie case alleging such deliberate indifference requires the inmate-plaintiff to demonstrate that he suffered from an objectively serious medical need and that prison officials actually knew of, but deliberately disregarded, that need." *Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007) (citation omitted). But "nothing in the

Eighth Amendment prevents prison doctors from exercising their independent professional judgment." *Long v. Nix,* 86 F.3d 761, 765 (8th Cir. 1996). Further, plaintiff is not entitled to relief simply because a different medical professional may have diagnosed him differently. *White v. Farrier*, 846 F.2d 322, 327 (8th Cir. 1988). Moreover, "[p]rison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Merlin,* 86 F.3d at 765. Additionally, "[p]rison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis and the decision of whether to refer the inmate to outside doctors or dentists." *Holden v. Hirner,* 663 F.3d 336,343 (8th Cir. 2011). More to the point, "[p]rison officials cannot substitute their judgment for a medical professional's prescription." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir 2002). Finally, the Eighth Circuit has held that "[d]eliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted).

There is a substantial difference in the allegations put forth in plaintiff's initial complaint against Jane Doe 1 versus those against Jane Doe 1 in plaintiff's amended complaint. In his initial complaint plaintiff alleges that Jane Doe 1 evaluated his symptoms and told him that it could be a while until she was able to have him examined by a doctor due to pressing needs at ERDCC. Whereas, in the amended complaint, plaintiff makes the allegations against Jane Doe 1 appear as though no offender in the Administrative Segregation Unit was being seen by a medical professional.

Additionally, plaintiff attempts to make his symptoms of IBS seem dire and as though he was in imminent danger, when in reality, plaintiff appears to have suffered from diarrhea and/or constipation and/or vomiting on two separate occasions prior to submitting an HSR to Jane Doe 1 in mid to late January of 2024. And by February 5, 2024, he was seen by the Jane Doe 1 at his cell

to discuss his symptoms and when she thought he could be seen by a doctor. Plaintiff does not report in his complaint that his symptoms were so severe that he was losing weight, unable to eat, unable to perform daily functions, severely dehydrated, etc. Additionally, he does not report that correctional officers took him to the infirmary to be seen by a doctor for an emergent medical issue.

Plaintiff appears to conflate his requests to see a doctor to obtain a new Hyoscyamine prescription, which the medical community at ERDCC may or may not have believed plaintiff needed, with his request for sick call at the end of January of 2024, after he began to develop symptoms of IBS. These two instances are separate allegations. The first allegation is based on a policy set forth by the Missouri Department of Corrections as analyzed above, and the second reflects whether plaintiff was treated for a serious medical condition by Jane Doe 1. "The Court [] does not consider statements...which merely constitute personal opinions as opposed to facts." *Woods v. Wills,* 400 F. Supp. 2d 1145, 1162 n. 7 (E.D. Mo. 2005). Plaintiff has not alleged enough in his complaint to show that he was suffering from a serious medical condition.

**C. Even if Plaintiff Had Exhausted His Administrative Remedies, and his Claims Survived Initial Review, This Action Would be Subject to Dismissal Because Plaintiff Has Not Shown that He is Under Imminent Danger of Serious Physical Injury**

The Prison Litigation Reform Act "enacted a variety of reforms designed to filter out the bad [prisoner] claims and facilitate consideration of the good." *Jones v. Bock*, 549 U.S. 199, 204 (2007). One of these reforms is what is commonly known as the "three strikes" provision of 28 U.S.C. § 1915(g). *Orr v. Clements*, 688 F.3d 463, 464 (8th Cir. 2012). Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This section does not apply unless the inmate litigant has three strikes at the time he filed his lawsuit or appeal. *Campbell v. Davenport Police Dep't*, 471 F.3d 952, 952 (8th Cir. 2006). However, "[a] prior dismissal on a statutorily enumerated ground counts as a strike even if the dismissal is the subject of an appeal." *Coleman v. Tollefson*, 575 U.S. 532, 537 (2015). In other words, "a prisoner who has accumulated three prior qualifying dismissals under § 1915(g) may not file an additional suit in forma pauperis while his appeal of one such dismissal is pending." *Id*. at 1765. For purposes of this section, a dismissal for failure to state a claim counts as a strike whether the dismissal was with prejudice or without. *Lomax v. Ortiz-Marquez*, 140 S.Ct. 1721, 1723 (2020).

Review of plaintiff's litigation history in the federal court system shows that plaintiff accumulated at least three "strikes" in the Eastern and Western Districts of Wisconsin. *See Garner v. Huibregtse, et al.*, No. 3:09-cv-301-SLC (W.D. Wis. July 28, 2009) (district court dismissed plaintiff's action for failure to state a claim based on res judicata, and assessed a strike under 28 U.S.C. § 1915(g)); *Garner v. Kirby*, No. 3:14-cv-545-JDP (W.D. Wis. Feb. 9, 2017) (district court dismissed plaintiff's action for factual frivolousness, and assessed a strike under 28 U.S.C. § 1915(g)); and *Garner v. Hill, et al.*, No. 2:17-cv-51-LA (E.D. Wis. Mar. 1, 2017) (district court dismissed plaintiff's action for failure to state a claim, and assessed a strike under 28 U.S.C. § 1915(g)). Based on plaintiff's previous filings, the United States District Court for the Western District of Wisconsin specifically determined that plaintiff was subject to the three-strikes provision of 28 U.S.C. § 1915(g). *See Garner v. Esser, et al.*, No. 3:17-cv-561-JDP (W.D. Wis. Sept. 13, 2017 (discussing plaintiff's prior strikes and determining that he could not proceed in forma pauperis).

In addition, this Court has denied plaintiff leave to proceed in forma pauperis and dismissed two of his complaints based on his having accumulated at least three strikes. *See Garner, et al. v. Keen, et al.*, No. 4:20-cv-1690-RLW (E.D. Mo. May 13, 2021) (denying plaintiff's motion for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(g) and dismissing without prejudice to the refiling of a fully-paid complaint); and *Garner v. Keen, et al.*, No. 4:21-cv-876-MTS (E.D. Mo. July 27, 2021) (same). The Court notes that plaintiff accumulated his strikes before the filing of his complaint on August 10, 2021.

Prisoners who have had three previous civil lawsuits or appeals dismissed as frivolous, malicious, or for failure to state a claim must prepay the entire filing fee. *Lyon v. Krol*, 127 F.3d 763, 764 (8th Cir. 1997). Nevertheless, pursuant to 28 U.S.C. § 1915(g), an indigent inmate who has acquired three strikes may still file a lawsuit if he or she is under imminent danger of serious physical injury. *Higgins v. Carpenter*, 258 F.3d 797, 800 (8th Cir. 2001). This exception provides a "safety valve for the three strikes rule to prevent impending harms." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). However, for this exception to apply, an otherwise ineligible prisoner must be in imminent danger at the time of filing. *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998). Allegations of past imminent danger are not sufficient to trigger the exception to § 1915(g). *Id*. Furthermore, the prisoner must present "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Martin*, 319 F.3d at 1050.

Here, plaintiff's allegations do not demonstrate that he is in imminent danger of serious physical injury, or that he is at any risk of impending harm. Plaintiff's claims relating to his irritable bowel syndrome occurred between December and February of 2024. He indicates he had constipation, some nausea, a little vomiting, and some diarrhea. Plaintiff also complains that he

was attempting during this same time to have his glasses replaced which were lost during his move from one prison to another. Plaintiff does not complain of an excessive weight loss or an inability to eat. He also does not complain that his IBS interfered with his daily activities or that correctional officers had to take him to the infirmary for an emergency such as for dehydration. Additionally, the Court specifically noted in its March 12, 2024 Opinion, Memorandum and Order that it was aware of plaintiff's three strikes status and that he would need to show in his amended filing how he was under imminent danger to move forward as a pauper. Because plaintiff has failed to show that the exception to the three-strikes provision in 28 U.S.C. § 1915(g) applies to him, the Court will deny his motion for leave to proceed in forma pauperis, and will dismiss this action without prejudice to plaintiff refiling a fully-paid complaint.

## Conclusion

Having thoroughly reviewed and liberally construed the Complaint, the Court finds that plaintiff's claims are subject to dismissal based on the aforementioned analysis. The Court can envision no amendment to the complaint that would cause it to state a valid claim for relief. Therefore, the Court will dismiss this action at this time, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motions seeking leave to commence this action without prepaying fees or costs [ECF Nos. 4 and 8] are **DENIED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice to plaintiff refiling a fully-paid complaint. *See* 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that alternatively, this case is **DISMISSED** without prejudice as legally frivolous or for failure to state a claim for relief. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion to dismiss certain parties and claims as set forth in his original complaint [ECF No. 6] is **DENIED AS MOOT** as plaintiff filed an amended complaint which superseded his original complaint.

**IT IS HEREBY CERTIFIED** that an appeal from this Order of Dismissal would not be taken in good faith.

Dated this 23rd  day of May, 2024

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE